**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Aldo P.Y.A.,

Petitioner,

v.

Todd Blanche, *Acting U.S. Attorney General*; Daren K. Margolin, *Director for Executive Office for Immigration Review*; Markwayne Mullin, *Secretary, U.S. Department of Homeland Security*; Todd M. Lyons, *Acting Director of Immigration and Customs Enforcement*; David Easterwood, *Acting Director, St. Paul Field Office, Immigration and Customs Enforcement*; and Ryan Shea, *Freeborn County Sheriff*,

Respondents.

Civ. No. 26-3583 (JWB/JFD)

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

---

David L. Wilson, Esq., and Lee Anne Koller Mills, Esq., Wilson Law Group, counsel for Petitioner.

David W. Fuller, Esq., and Derek Ganzhorn, Esq., United States Attorney's Office, counsel for federal Respondents.

David John Walker, Esq., Freeborn County Attorney's Office, counsel for Respondent Ryan Shea.

---

Petitioner Aldo P.Y.A. is a noncitizen who was detained within the United States and remains in custody without any opportunity to seek release on bond. This case presents a narrow question: whether a noncitizen who was previously released into the United States as a minor, lived in the community with his mother, and was later re-

detained as an applicant for admission may continue to be held without any meaningful opportunity to obtain an individualized determination regarding the justification for his continued detention.

Respondents contend that the governing statute authorizes detention of noncitizens classified as applicants for admission. But statutory authority to detain does not itself resolve whether the manner in which that authority is exercised satisfies the Due Process Clause. Whether the Constitution requires additional process under the circumstances presented here is a separate question. On the facts of this case, the answer is to provide Petitioner with a prompt bond hearing.

**BACKGROUND**

Petitioner is a citizen of Ecuador. (*See* Doc. No. 1, Petition ¶¶ 11, 27.) He entered the United States without inspection on December 8, 2024, when he was 16 years old. (*Id.* ¶ 28; Doc. No. 7, Northwood Decl. ¶ 4; Doc. No. 7-3 at 2.) After being encountered and detained by the United States Border Patrol, he was processed as an unaccompanied minor and then released into the country. (Petition ¶ 29; Northwood Decl. ¶ 5.)

On April 24, 2025, Petitioner was issued a Notice to Appear, which initiated removal proceedings. (Northwood Decl. ¶ 6; Doc. No. 7-4.) The Notice to Appear indicates that Petitioner was living at his mother's address in Columbia Heights, Minnesota. (Doc. No. 7-4 at 4; Doc. No. 7-3 at 1.)

On August 4, 2026, an Immigration and Customs Enforcement ("ICE") agent encountered Petitioner at the Anoka County Jail, where he had been confined by local law enforcement on an arrest for driving while impaired. (Petition ¶ 32; Northwood Decl.

¶ 6; Doc. No. 7-3 at 1–2.) After confirming Petitioner's identity against federal databases, agents issued an I-247 immigration detainer, signed and served an I-200 arrest warrant, and placed Petitioner under arrest. (Northwood Decl. ¶¶ 7–8; Doc. No. 7-3 at 2; Doc. No. 7-1; Doc. No. 7-2.)

Petitioner was transferred to St. Paul for processing. (Northwood Decl. ¶ 8; Doc. No. 7-3 at 2.) He remains in ICE custody at the Freeborn County Jail. (Petition ¶ 35; Northwood Decl. ¶ 9.)

## DISCUSSION

### I. Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Petitioner bears the burden of establishing, by a preponderance of the evidence, that his detention lacks a lawful basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Petitioner claims his detention without a bond hearing is unlawful because it violates the Due Process Clause of the Fifth Amendment. (Petition ¶¶ 61, 66–69.) He had also asserted claims based on the allegation that he was arrested without a valid warrant, but he later withdrew the contention. (*See* Doc. No. 8 at 1.)[1]

---

1 Respondents argue that the entire Petition should be denied because it was signed and verified by Petitioner's counsel. The argument is rejected because someone acting on the petitioner's behalf may sign and verify the petition. 28 U.S.C. § 2242. Doing so is particularly useful for managing the urgency and logistical difficulties of ICE detention. *See, e.g.*, *Franklin P.C.S. v. Blanche*, Civ. No. 26-3887 (JRT/EMB), 2026 WL 2687548, at *2 n.3 (D. Minn. Sept. 14, 2026); *Vu V.L. v. Mullin*, Civ. No. 26-2947 (LMP/JFD), 2026 WL 1893611, at *3–4 (D. Minn. July 1, 2026). Moreover, the inaccuracies identified here have been addressed, and Petitioner withdrew the related contention.

The Petition challenges only the legal basis for Petitioner's present detention. It does not challenge the initiation of removal proceedings, the validity of any removal order, or the execution of removal. Jurisdiction therefore lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition challenges only Petitioner's detention, and not his removability or any removal order, the statutory jurisdiction-channeling provisions do not apply. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

## II. Analysis

### A. Statutory Detention Authority

Respondents assert that Petitioner is an applicant for admission and must be detained without a bond hearing under 8 U.S.C. § 1225(b)(2)(A).

Section 1225 applies to "applicants for admission," defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States." *See* 8 U.S.C. § 1225(a). Section 1225(b)(2)(A) provides that applicants for admission who are "seeking admission" and not "clearly and beyond a doubt entitled to be admitted" "shall be detained" for removal proceedings. 8 U.S.C. § 1225(b)(2)(A).

The Eighth Circuit recently affirmed Respondents' position that the phrases "applicant for admission" and "seeking admission" are the same. *Avila v. Bondi*, 170 F.4th 1128, 1134–36 (8th Cir. 2026). Under *Avila*, a noncitizen present in the United States who has not been lawfully admitted is treated as an applicant for admission for § 1225(b)(2)(A) purposes, regardless of whether they were encountered at the border or

within the interior. And under that statutory provision, the government can detain without bond. *See id.* at 1138 (finding the district court "erred in holding that the Government could not detain Avila without bond under § 1225(b)(2)(A)"); *see also Jennings*, 138 S. Ct. at 851 (pointing out that § 1225(b)(2) does not reference bond hearings and finding that periodic bond hearings are not required as a matter of statutory construction).

Respondents assert that Petitioner, as a noncitizen who has not been lawfully admitted, is deemed to be an applicant for admission and subject to mandatory detention without bond, no matter how far from the border he was apprehended or how long he had been living inside the country.

That is an accurate statement of § 1225(b)(2)'s meaning under *Avila*. But statutory authority to detain does not itself resolve whether the manner in which that authority is exercised comports with the Constitution. Indeed, in *Jennings*, the Supreme Court rejected a statutory construction that would have required bond hearings under § 1225(b)(2), while expressly declining to reach the constitutional due process arguments. 138 S. Ct. at 851. In other words, *Jennings* recognized that the statutory and constitutional questions are different, and an answer to one is not an answer to the other. It found Congress did not provide for bond hearings in the statute but did not analyze whether the Constitution might compel one as a matter of due process.

The constitutional analysis is a separate inquiry. The Fifth Amendment's Due Process Clause protects noncitizens in removal proceedings from deprivations of liberty without due process of law. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Thus, even where Congress has authorized mandatory detention, this Court must still determine whether the

procedures afforded satisfy the requirements of due process under the particular circumstances presented.

The question here is not whether Congress authorized Petitioner's detention under § 1225(b)(2)—it did, according to *Avila*. The question is whether Petitioner's continued detention in this case without any meaningful opportunity to obtain an individualized determination regarding the justification for that continued detention satisfies the Due Process Clause.

**B. Constitutional Protections**

The Fifth Amendment prohibits the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. That protection extends to all persons physically present within the United States, including noncitizens, regardless of whether their presence is lawful, unlawful, temporary, or permanent. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Although civil immigration detention is constitutionally permissible in appropriate circumstances, it must remain reasonably related to its nonpunitive purposes and must satisfy the requirements of procedural due process. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

The process due under the Fifth Amendment depends on the particular circumstances presented. *See Smith v. Org. of Foster Fams. for Equal. & Reform*, 431 U.S. 816, 847 (1977) (recognizing that once a protected liberty interest is shown, the next step is to determine what process is due in the particular context). That inquiry is governed by the familiar balancing framework established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which considers (1) the private liberty interest affected, (2) the risk

of an erroneous deprivation through the procedures used and the probable value of additional safeguards, and (3) the government's interests.

Respondents contend that no procedural due process inquiry is needed. They argue that because Petitioner is treated by statute as an applicant for admission, Congress has already determined the circumstances under which detention is required and no additional process is constitutionally necessary. The authorities they cite for this proposition do not go so far.

Respondents cite *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). That decision does make broad pronouncements about the rights and constitutional status of applicants for admission. But the pronouncements relate to admissibility determinations, "rights regarding admission," and the legal effect of parole, all in the context of rejecting a due process challenge to the statute that precludes judicial review of a credible fear determination. *See id.* at 138–40. The posture of this case is materially different. Petitioner was not apprehended at or near the border and kept in continuous custody while seeking initial entry. He entered as a minor, was processed by the government as an unaccompanied child, was released into the interior, and remained at liberty before being taken back into immigration custody. The question here is therefore not what process is due in making an initial admissibility determination, but what process is required once the government later terminates an existing period of liberty through renewed physical confinement.

Respondents also rely on *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), arguing that because § 1225(b)(2)(A) does not make detention contingent

upon dangerousness or flight risk, procedures directed toward those questions are irrelevant and Petitioner's due process claim is in fact substantive, not procedural. In *Connecticut*, the Supreme Court held that due process did not require a hearing on dangerousness before convicted sex offenders were placed on a state registry. *Id.* at 7–8. Because the registration statute operated solely on the fact of prior conviction, a determination on dangerousness was irrelevant to the statutory scheme as it had been enacted. *Id.*

Here, Petitioner's procedural claim materially differs in both its posture and its nature. Under *Avila*, § 1225(b)(2)(A) applies to Petitioner as an applicant for admission. But before his present detention, he had already been processed through federal custody, released, and living freely in the country. The question is therefore not whether any applicant for admission subject to § 1225 is constitutionally entitled to a pre-detention hearing on dangerousness or flight risk. It is whether, under the circumstances of Petitioner's case, the government may extinguish an existing liberty interest through renewed confinement without any individualized process to justify the continued deprivation. *Connecticut* does not resolve that distinct procedural question.

Neither *Demore v. Kim*, 538 U.S. 510 (2003) nor *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), also cited, compels a different conclusion. Those cases concerned mandatory detention under § 1226(c), which ties detention to specified criminal predicates reflecting Congress's categorical concerns about public safety and flight, and principally rejected claims that otherwise lawful detention had become unconstitutional because of its duration. Petitioner's case is different. He is not detained under 1226(c),

and he does not contend that detention lawful at the outset became unconstitutional merely because it continued too long. Instead, he challenges the complete absence of any individualized custody process after the government had previously released him into the community.

Applying the *Mathews* factors, Petitioner's liberty interest is substantial. Petitioner was not encountered at the border or while attempting to enter the United States. Although he was  initially detained when he first crossed the border as a minor, the government then released him into the country, where he eventually reached his mother's address. Petitioner made his way beyond the border because the government put him into its process for unaccompanied minors. At the time of his arrest over a year and a half later, the record reflects that he still lived at his mother's address in the community. He does not have any criminal convictions. Respondents note that Petitioner was arrested for DWI, but the record also indicates that the arrest lacks a disposition. Although those facts do not alter Petitioner's statutory status as an applicant for admission, they bear directly on the nature of the liberty interest at stake. At stake here is Petitioner's liberty itself, which is further defined by the government's role in facilitating his presence in the country and the life he lived while free from custody. Under these particular circumstances, continued physical confinement constitutes a significant deprivation.

The second *Mathews* factor likewise weighs in Petitioner's favor. The relevant risk of error is not whether Petitioner has been correctly classified as an applicant for admission; *Avila* resolves the statutory classification. The risk arises instead from the government's decision to terminate the liberty it had previously afforded him without any

process directed to whether renewed confinement continues to be warranted. No decisionmaker has considered his circumstances in determining whether continued physical custody is necessary, and the removal proceeding itself does not address that question. An individualized custody determination would directly address that risk. Respondents assert that Petitioner can still contest removability during his proceeding. But that does not address the relevant problem. It does nothing to reduce the risk that an erroneous deprivation would go undetected under the current procedure. Without any custody review, there is no procedure for testing whether renewed and ongoing confinement remains justified in light of Petitioner's individual circumstances. That omission creates a substantial risk that liberty will continue being deprived without the individualized justification due process requires in this posture.

The government's interests are also substantial. Congress has a legitimate and important interest in ensuring that applicants for admission appear for removal proceedings and protecting the public where appropriate. Making an individualized custody determination, however, does not undermine those interests. It does not mean that § 1225 has no force as a statutory matter. It simply means, as a constitutional matter, that Petitioner's continued detention would be supported by a neutral decisionmaker's individualized assessment. The modest administrative burden associated with such a determination is outweighed by the significant private liberty interest at stake and risk of erroneous deprivation.

Under the particular circumstances presented here, Petitioner's continued detention without any meaningful opportunity to obtain an individualized determination

regarding the justification for that detention does not satisfy procedural due process. Accordingly, his continued detention violates the Due Process Clause of the Fifth Amendment.

### C. Remedy

The constitutional deficiency identified here lies not in the statutory authority to detain, but in the procedures afforded regarding Petitioner's continued detention. Although § 1225(b)(2) authorizes Respondents to detain Petitioner as an applicant for admission, that statutory authority does not eliminate the constitutional question of whether continued immigration detention satisfies due process under the circumstances of Petitioner's case. Conducting a constitutional inquiry into whether additional process is needed in this case does not invalidate § 1225(b)(2) or preclude Respondents from following its requirements when applicable. As explained above, Petitioner has not received a constitutionally adequate process. Without it, his detention is unlawful, and habeas relief is warranted.

The appropriate remedy is to require Respondents to provide the constitutionally adequate process that has been lacking. Under the existing statutory and regulatory framework, a prompt individualized custody hearing before an Immigration Judge is the appropriate means of providing that process. Ordering a bond hearing here does not mean a bond hearing is constitutionally required in every case arising under § 1225(b)(2). Rather, it is warranted after considering the facts and procedures followed in this particular case, which presents an ongoing, significant loss of liberty in the absence of any individualized determination of the basis for the continued deprivation.

Respondents shall therefore provide Petitioner with an individualized custody hearing before an Immigration Judge within seven days of this Order. At that hearing, Respondents may seek continued detention based upon an individualized showing that Petitioner presents a flight risk, a danger to the community, or another lawful basis warranting continued detention.

Petitioner's statutory classification as an applicant for admission remains relevant to Respondents' detention authority, but it does not, standing alone, resolve whether continued detention is constitutionally permissible under the circumstances here. If Respondents do not provide the required custody hearing within seven days, Petitioner shall be immediately released from custody.

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1. Petitioner Aldo P.Y.A.'s Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED IN PART**.

2. Petitioner's continued detention, under the particular circumstances presented here and without any meaningful opportunity to obtain an individualized determination regarding the justification for that continued detention, violates the Due Process Clause of the Fifth Amendment.

3. Within **7 days** of the date of this Order, Respondents shall provide Petitioner with an individualized custody hearing before an Immigration Judge in Minnesota. At that hearing, Respondents may seek Petitioner's continued detention based

upon an individualized showing that continued custody is justified.

4. Respondents, or anyone acting in concert with Respondents, are **ENJOINED** from removing, transferring, or otherwise facilitating the removal of Petitioner from the District of Minnesota until the custody hearing required by this Order has been conducted and the Immigration Judge has issued a custody determination.

5. If Respondents do not provide the hearing required by Paragraph 3 within 7 days of the date of this Order, Petitioner shall be immediately released from custody.

6. If Petitioner is released:

a. **Release and Return of Property.** In the event that Respondents release Petitioner, he must be released in Minnesota. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

b. **Return to Minnesota.** If Petitioner is currently held outside Minnesota, Respondents shall initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiating Petitioner's return based on administrative convenience, transportation availability, or detention-capacity considerations.

c. **Weather-Related Delay.** If weather conditions present a safety risk at the time of release, Respondents may delay physical release only for the brief period necessary to ensure safe release. Any such delay must be strictly limited and may not be used to justify continued custody where a safe alternative is available.

d. **No Recharacterization of Custody.** Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court,

or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents' compliance with this Order would require Petitioner's release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions. Any such conditions imposed at the time of Petitioner's release shall be considered null and void as inconsistent with this paragraph.

7. **Notice.** On or before **October 15, 2026**, Respondents shall file a notice advising the Court whether they have complied with this Order. If a custody hearing has been conducted, Respondents shall report the disposition of that hearing. If Petitioner has been released, Respondents shall state the date, time, and location of the release.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: October 5, 2026
Time: 4:30 p.m.

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge